Hi, good morning, Judge. May I begin? Yeah, please proceed. Go ahead. Thank you, Your Honor. May it please the Court, my name is Joseph Matea and I represent Appellate Robert Whitmire. Words within a statute must be read and must be given their plain meaning. This has been the guiding principle within statutory interpretation law for North Carolina for over the last century. The District Court violated this principle when it decided to interpret a North Carolina notice statute in a way that rendered parts of it meaningless and did not give all the words their plain meaning. Additionally, the District Court failed its duty to adjudicate this manner in accordance with North Carolina law when it failed to apply these principles. As this Court said in Suarez, any federal district court sitting in diversity of a legal state question is required to determine that based on how that state's Supreme Court would rule. This is first done by looking at the state's Supreme Court's rulings and then to the opinions of lower courts. Looking at the law found throughout North Carolina's history, it shows that there are clear and four salient points about why the District Court did not properly interpret the statute placed before it. To start, Your Honors, the federal, excuse me, the Supreme Court in North Carolina and state feedback directly stated that when a statute is clear, plain, and unambiguous, there is no room for judicial interpretation. Rather, a judge has a duty to give those words their plain meaning. It is important to note that in the District Court's entire opinion, it does not once state that the statute is ambiguous, confusing, or murky. In fact, what if giving it meaning would lead to an absurd result? What if you do that, and you look at it, and you say, that's absurd. Yes, Your Honor. There is a principle within North Carolina that states that if you read a statute plainly, and it leads to an absurd result, that it is possible for a judge to change the way that statute is basically interpreted and written. However, that does not seem to be at all present here, given the facts known specifically to Ms. Whitmire's policy, as well as to the action that Southern Farm itself took. Additionally, the District Court itself referenced a case, Lodica v. Barland, that talked about- Can you go back? Wait. Can you go back? You just gave us two conclusions. Can you, can you spill that out for us? Why is it that you think it's not absurd given the, I think what you're saying was the facts of this particular case? Yes, yes, Your Honor. So under this specific case, Ms. Whitmire took out a policy in North Carolina in 2005. For the next decade, Southern Farm sent every notice to that North Carolina address. And every time it sent that notice, it received a prompt payment, and there was no miss of a premium notice being paid. As such, it's important to note that Southern Farm never spoke to Ms. Whitmire regarding a change in her address. As far as it was aware, the contract's address was always the same for the entire existence of the contract. Counselor, let me ask you this. I'm just not sure that we need to look at the statute the way you do when you look at the words, last known post office address in this state. I'm not sure that that's not free of some ambiguity. I'm not sure that it doesn't address the situation. It leaves just, the statute leaves unaddressed the situation where somebody has left the state and gone to a different state. You say that the language is so clear, and if this were purely a plain language case, fine, I would agree. And I'm not much of a believer in the absurdity doctrine because I don't think legislatures are prone to do absurd things. And I worry about the absurdity doctrine leading us to believe that. When I kept reading the statute, it didn't seem to me all that clear because I'm not sure that it addressed the situation of where the last address, the last post office address was somewhere other than North Carolina. And in this case, in South Carolina. Yes, Your Honor, that is a good question. And there are two cases that exactly how they are plain and unambiguous. The district court relied heavily on Napier when it came to its decision, which was a trial level court case out of New York that dealt with a notice statute that had those same exact words, last known post office address in this state. And that court found there was only one reasonable and logical way to interpret those words, which is the sending of a notice in the state where the statute was passed. Additionally, there is the case of Garland, which happened. Of course, they did that. I mean, they sent it to dual addresses at one point. Yeah, that is exactly correct, Your Honors. In June of 2016, when Southern Farm was informed by the USPS of an address change, it had no issue sending dual notices both to the North Carolina and the South Carolina address. It seemed to me that, you know, insurance companies are not always on good behavior, but just reading the total record in this case, I wondered if this insurance company hadn't been a model citizen and tried to do everything that could reasonably be done, because the whole purpose of the North Carolina statute is to increase communication between the insurer and the insured. They went to some, I would be really pleased if all insurance companies went to the lengths that this one did. But there's another problem that I have with your position here, in addition to the ambiguity that I see in the statute. And that is that if we interpret the statute the way you want, I wonder if we're not interpreting it in a way that does damage to the sovereign interests of South Carolina, because comity as a principle of statutory interpretation must still be alive and well. Because as she moves to South Carolina, North Carolina's interest recedes, and South Carolina's interest begins to build. And I'm just worried about interpreting the statute of one state in a way that impinges in a rather basic fashion upon the citizens of another state. And we'd be telegraphing to the insurance company, hey, there's a way you can get out of this policy or whatever, and we don't want you to send this notice to the address that's most likely to reach the insured. Just go ahead and send it to a North Carolina address and she'll maybe not receive it. And because she's in South Carolina, and then you can rescind the policy. And it leads to all kinds of problems to the state to which the insured moves and takes up residence. I mean, somebody being Wyoming and you just send it to North Carolina, and for whatever reason, it doesn't reach the Wyoming resident. And Wyoming's desire to protect the interest of its own citizens is shortchanged. That's the of comity between different states. And a function also of the wording, leaving some degree of ambiguity, at least in my mind. Well, your honor, there's a few points that I would like to respond to that, that I think can address your concerns. For one, your example of someone moving to Wyoming. Wyoming is completely free to pass any law that it would like to protect citizens that moved there, that took out policies in other states. So it is not on the burden of the North Carolina General Assembly to worry about the regulation of insurance in every other state in the country. Rather, it is worried about North Carolina contracts. And at the trial level, Southern Farm did try to get this case removed to South Carolina, trying to make the argument that it has an interest. And that was the state where it had the most impact based on this case. And as the trial court ruled, and it agreed with Mr. Whitmire, is that a policy taken out in North Carolina, or a North Carolina resident that has been paid in North Carolina for over a decade, that's governed by North Carolina law, that is the state that has the most interest. And the North Carolina General Assembly, by instituting this specific notice statute, was making clear it's worried about notices within its state. The Wyoming example, the South Carolina example, I'm not sure why our federal system puts a burden on Wyoming or South Carolina to check the laws of every other single state to see if there might be some notice provision that disadvantages its own citizens. That's putting a burden on South Carolina and a burden on Wyoming that, again, strikes me as difficult to justify under a notion of comity. No, that is a very good point, Your Honor. But at the same point, what you raise is putting a burden on North Carolina to protect citizens of every other state. The North Carolina General Assembly represents the constituents of North Carolina. As such, when it is passing a law, it's worrying about the people within its borders and contracts that are governed by its law, as well as the fact that Wyoming could very well easily make a law without looking at the other 50 states and simply say, if someone has an insurance policy that lives in this state, the insurance company must send them a notice. There's plenty of states in this union that have no notice statute at all. In fact, Southern Farms headquartered out of Mississippi. There is no notice statute akin to this at all in the entire state of Mississippi. Southern Farms sells policies in Mississippi. I venture to guess they still send premium notices in those states because, like any service provider that is providing a service, it's going to send you a bill. But getting back to the crux of this case regarding the North Carolina law, an important principle is to understand that when there is a compulsory insurance statute, as here, the courts are required to interpret it liberally to extend coverage where reasonably possible. And there are several cases from Harrison to also state capital versus nationwide that gives good examples of the Supreme Court of North Carolina just doing that. And what I submit to this court, your honors, is it takes no liberal or broad interpretation of the statute to extend coverage here. It requires the most straightforward and simple reading of the words. Well, let me interject and follow up. I've been pondering Judge Wilkerson's positions on it, which I respect highly in terms of where he's going. And I think we're headed in the same direction on this. I'm having trouble at least looking at this statute, even from a textualist standpoint. This statute says just what it says. And I know Judge Wilson may not like the absurdity way. I tend to think that's the way you have to come out of this. Because there's nothing in here that says that makes it ambiguous because you didn't consider that someone could move out of state. I think the North Carolina legislature probably considered that when they did this. They looked at it and says, you know, we got military bases here and people that travel all over the place. And we have major companies and people, even in my neighborhood, I know people moved four or five times probably in the last few years in South. And so North Carolina looked at this thing and says, okay, if you're going to do business in this state, you need to send that notice to the last address in this state. And when I look at that way, it makes it simple. What makes it really troubling here is the, your client actually had the postal service to send a notice. Because I think there's a temporary one where you do it. And then they send notices to people that send it to this company and said, her address is in South Carolina. Then that company and Judge Wilson was right. I think this company went way out of his way to do all it could. It sent notices to them and said, okay, where do you want us to send it to? As I responded, either way, one way or the other on where to send those premium notices to. And the result is you got this conundrum here. The insurance company seems to have done everything it could. And even the husband here who was actually paying the premiums on it, he knew he wasn't paying the premiums on it. I mean, that's the troubling thing. That doesn't drive to the fact that she's the one, even though she didn't do it directly, that got the postal people to send it to the insurance company to say she's out in South Carolina. And so when you have a person who sort of goes beyond the statutes and says, okay, you don't need to send it to the last known address, send it to South Carolina. And then when they send it to South Carolina, it says, oh no, and she passes away, you should have sent it to the last known address. Nobody could have been there. I mean, she didn't necessarily have to come back to that address. It may not even have been an address there. And what you're saying is if the insurance company had done just what you said, and that is she's in South Carolina, post office has already told them to send it to South Carolina, insurance company sends it to the last known address. Would it be your position that that's even though they have noticed that she's now in South Carolina? Would it be your position that's okay? Well, your honor, I see that my time has expired. Can I have time to respond to that question? Yeah, absolutely. Yes, your honor. I would say that underneath those circumstances given, yes, that's exactly where the notice would have to be sent, North Carolina, because again, this is not a question. But that's not the only place the notice could be sent. It doesn't prohibit sending notice anywhere else. All it does is provide a default rule that says whatever else you do, you have a customer, you need to provide for them. But what it says is whatever else you do, as Judge Wynn indicated, we're in North Carolina, we're about protecting North Carolina people. And so whatever address you got in North Carolina, this state, which I don't read to be anything other than North Carolina, you got to at least send one to that state. That's all it says. It doesn't say you can't send it to any address you want to send it to. And in fact, as a good insurance company, maybe that would make a ton of sense. But the point is, is that whatever you do, there is a floor and that floor is you must send it to the last address in this state, meaning the great state of North Carolina. That is completely correct, your honor. It provides a safety net for North Carolinians because it's a North Carolina law. And as you're pointing out, the insurance company is only sending a notice to wherever it can, but it must send one to North Carolina for a North Carolina policy. And it's important to note, as already that's been noted by the panel, the Southern Farm already sent two notices back in June of 2016 to two different addresses. So it's not as if it's a crazy high bar for it to meet to send that additional notice. Additionally, it sounds as if the argument that the notice has to send to North Carolina is really just a problem with the wisdom of what North Carolina's General Assembly wanted to guide its insurance practices to be. And your honor, that is not an argument for the court of law here today. That's an argument for the North Carolina General Assembly. An argument was very similarly made and sent where the district court was faced with a similar issue where it seemed like sending the notice according to the statute would not make much sense. But as that court correctly noted, that's not the court's job to determine how North Carolina decides to make policies last. The court's job is to read the words on the page and require compliance with this compulsory insurance statute. As such, your honors, I am submitting to this court today that this is the reason why the district court must be overturned and Mr. Whitmire's motion for summary judgment should be granted. I see my time's running out and I don't want to continue going on. Thank you, Mr. Mattia. Thank you, your honor. Mr. Polman. Good morning, your honor. Thank you. Aaron Polman on behalf of Southern Farm Bureau Life Insurance Company. May it please the court. I'd like to start with a point that has not been addressed thus far and it has to do with the argument that was actually presented by the appellant in this court was that the statute at issue required Southern Farm Bureau to send a notice of lapse to Mrs. Whitmire, which is different from a premium notice. And in the district court, the plaintiff articulated this argument quite clearly saying that there was a significant distinction between premium notices and lapse notices and that the statute only requires a lapse notice and does not apply to premium notices. So, the issue that is presented by the plaintiff appellant in this case is quite narrow actually. The issue is did Southern Farm Bureau violate the statute when they sent a notice of lapse to Mrs. Whitmire at her South Carolina address in September of 2016? That is the issue that was actually presented by the appellant even though there are a lot of other issues floating around here. But that the answer to that question quite simply is no because the statute itself does not apply. I'm sorry. I don't understand that. Say that one more time. I don't think anybody's arguing that sending anything to South Carolina violates any statute. The insurance company is not prohibited from sending it to South Carolina, publishing it in a newspaper. I mean, this statute doesn't prohibit them from doing anything. It is not a ceiling. It is a floor, right? And so, they can send anything to South Carolina they want to. All this says is whatever else you do, you must also send a written or printed notice stating the amount of the premium to the last known address in this state. I understand the point Judge Richard's saying. It's just indulgence for just a second. And I agree with the points you're making except that the point I'm making is that the issue that's before the court has to do with last notice versus premium notice. What if the statute applies to last notices versus premium notices? So, the point that- Well, but you just said that they violated the statute by sending something to South Carolina. And what I'm saying is, maybe that's not what you're saying, or maybe I misheard you, but I thought you just said the question is whether they violated the statute by sending the September notice to South Carolina. And what I'm saying is, I don't see how in the It either requires- The statute either requires the notice to be sent, and if it requires the notice to be sent, then it's a violation of the statute if you don't send a notice. Well, but it requires a notice to be sent to the North Carolina address. It doesn't prohibit sending any notice to the South Carolina address. So, the point is, you can send two notices, right? But the statute requires that you send one, at least one, a written or printed notice stating the amount, right? And all these other things, to the last known address in the great state of North Carolina. Understood, Your Honor. I'm not disputing that point, but I think we're saying the same thing, that- Help me understand then, because maybe I've misunderstood. Yes, sir. The statute requires a notice to be sent, and if the notice is not sent, then you have violated the statute. The notice is not sent to the North Carolina address. Well, you can't cancel the policy, right? It doesn't mean the statute's been violated. It just says that you can't then The statute actually has a requirement that the notice be sent, as you pointed out, to the last known address. The language said to the last known address in North Carolina, but it's- No, no. It doesn't say that, right? It says, no policy shall be forfeited unless a notice is sent to the last address. So, you don't have to send the notice at all. You just got to keep the policy in effect. I will still argue, Your Honor, that it's a violation of the statute if you don't comply with that notice requirement. No, it's only a violation of the statute if you forfeit the policy, having not sent the notice. Well, the statute actually requires the policy to remain in effect for a year if there's no compliance with the statute. But- Counsel, what about the point on this fax that, I mean, Southern did send letters to both North Carolina and South Carolina addresses asking where they should send their communications. And Susan never responded to those. And then, in addition, she filed a change of address form with the post office to the South Carolina address. The import of that is, get in touch with me in South Carolina. And when you look at the bank statements and the auto insurance premiums and the driver's license and everything and her filing the change of address with the post office to South Carolina, doesn't that... It's almost like it's a request to send communications to the South Carolina address. Let's correct you, Your Honor. Mrs. Whitmire did file a permanent change of address notice with the U.S. Postal Service, which then Southern Farm Bureau became aware of. And so that's what prompted the two letters to be sent to confirm the change of address. So one letter was sent to the North Carolina address to confirm the change of address. The other was sent to the new South Carolina address to confirm the change of address. And when there was no response to either of those the insurance company, from that point forward, assumed that her address wasn't South Carolina, which it was. Why would it do that? It seems like the assumption would be the other way. You didn't get a confirmation that there was a change. But let me ask the other question. Judge Richardson has raised an interesting point. And I think it's going more to address the plain language of this statute. Because we don't look at something being absurd if there is a reasonable way to look at it in terms of the plain meaning of what's here. It seems very clear to me this statute says what it says. Last known post office address in the state. I'm still sympathetic to the cause that it sounds like that could create an absurd result. But Judge Richardson, I think, and Judge Richardson correct me if I'm getting this wrong, is saying that's a flaw. That doesn't mean you can't do other stuff. But if you're going to do business in the state of North Carolina, you have to send a notice to the last known address in this state. She can say I'm in Wyoming. She can say I'm in South Carolina. I'm overseas. I'm everywhere else. And you may have to, you know, she may have an argument that says, well, you need to send it there, too. That doesn't keep her from asserting that you should have sent it there, too. But the state of North Carolina says send it to the last known address in this state. And why is that not a reasonable interpretation? And again, Judge Richardson, if I'm misstating your position on this, let me know. Because that sounds like what he's saying. Because if you're looking at the and I yield, of course, to Judge Richardson, a different interpretation, if he, you know, articulate again or whatever, to find that ambiguous. The state of South says just what it says. And it's troubling in terms of what's going on here, because it doesn't seem right to me. I think the insurance company may have done all it could. But of course, the point you're making that she didn't confirm would seem, if she didn't confirm she's in South Carolina, seems like to me the reasonable person would, well, I'm going to send it to where it's been. Because you haven't, no one's confirmed this. I got this from the post office. They make mistakes. They do it. But no one there has told me to do anything different. How do you respond to that? Well, I think that the businesses around the country are allowed to rely on and, you know, if the insurance company receives a notice from the post office, that there's a change, then they will, that is one of the policies that they have, that they will then continue to send correspondence to them to address. I grant that. And I don't disagree with that at all. I think that sounds good. But still, it doesn't get rid of the whole business that this statute just creates a floor. Well, does it mean, so what that means is now you got to send one to South Carolina, but under this statute, you got to send one to North Carolina and South Carolina, the way I'm reading, if that's the case of it, if you want to be, you know, compliant with the statute. Right. Well, there are not many courts that have interpreted this language. They're not in North Carolina at all, except for the courts. And the only courts that have looked at a substantially similar statute in New York, which was enacted many, many years ago. And the case that Mr. Mattia mentioned was Napier, which is a trial court level case in New York. And the ruling from that court, there's a situation where the insured and policy owner was not in the state of New York. And so the question was, you know, is this, was the insurance company required to comply with the statute? And, you know, what do you do when the insurance, when the insured is out of the state, they don't live in New York. And so the ultimate conclusion of that case was that the only reasonable and natural interpretation was that the requirements of the statute only applied when the policy owner was living in New York and not in New York. But wait, just to be clear, to be clear there, like Napier said that like, last known address in this state meant last address in North Carolina. Right. I mean, it interpreted the language just like Judge Quinn and I have suggested, right, that it means the last post office address in North Carolina. Now, it may have had a different issue, but it did to mean what your opponent suggests, right? It means what it says. I think that the New York court was saying if there's no last known address in the state, then the insurance company does not have to send any notice at all. It's not required to comply with the statute. All right. So that makes perfect sense to me, right? Because if in fact there was no last known address in North Carolina. So if your insurance company never knew of a North Carolina address, I don't know how that would happen, but let's assume you didn't. Well, then if there is no last known address, then it's a null set and you wouldn't have to send anything to that address. It's fine. That means the statute doesn't apply. But we have a last known address here. I mean, it's our position that, you know, if insured news states that this statute doesn't address that situation, that if there's a notice. It plainly considers that somebody's moved, right? I mean, you will concede the statute considers that somebody might move, right? It possibly does, but it doesn't actually address. I mean, that's what last known address means, right? Is that that suggests that somebody might not be at that address anymore, right? Yes, sir. But the statute plainly considers that there are other states in the union other than North Carolina, because it doesn't refer to, you know, it doesn't just stop. It says this state, capital S, right? Great state refers to itself as it should. But it's this state. So it acknowledges that there are other states. It's having a real hard time understanding how you're getting where you're going. Well, I think the same reasoning applies whether the insured never had a residence in the state or moved states because last known address in the state. In other words, it doesn't apply to the last. If the last known address is no longer in the state, the last known address is in another state. Then the statute is inapplicable. The last known address is no longer in the state. It's somewhere else. The insurance company received no. But if it so if somebody moved, so imagine the person that we're describing lives in North Carolina and you got an address on Main Street, they didn't move to South Carolina and you know that and then they moved to Wyoming and you know that, right? The natural reading of the last known address in this state is the North Carolina address on Main Street. It's not the last known address in the abstract, which in my hypothetical would be South Carolina, right? It's the last known address in this state. No matter how many times you've moved since then, what's the last address you have in this state? Mr. Your Honor, we take the position that at the last that the way that the statute is to be should be read is that last known address in the state is not applicable if the last known address is not in the state of North Carolina. And you think that's a permissible reading of the statute? Yes, sir. I think it I think it's consistent with the way that the statute has been interpreted by the only courts to examine our language. I don't know how you get it out of this language. It says his or her last known post office address in this state. But if I can also address briefly, Judge Wynn, your point about the absurdity doctrine. You know what this if this is the the reading of the statute that requires the insurance company to continue to send premium notices indefinitely to an address that it knows to be incorrect. It creates all kinds of absurd problems for both the insurance company and the insurer. So, you know, according to this, this concept, I said, wait, wait, why? Why would it require to continue to send premium notices? All it will require is that before you forfeit a policy, you send a notice, one notice, not you got to send it every month. You got to send it every quarter. Right. All it requires is before you forfeit or lapse for nonpayment, you must send a notice one. Your Honor, I think I think to be compliant with the statute, the insurance company would have to continue to send these notices every time a premium is due. That's that's what triggers. I mean, to help help me and walk me through the text that would require that. Why? Why? Why would the statute? I don't see anything in the statute that requires that. I'm having a little hard time. Okay. It's you're right. It's it says that any corporation, insurance corporation doing business in the state shall within one year after the default and payment of any premium declared cannot declare forfeit or lapse any policy issued here, issued or renewed unless a written printed notice has been duly addressed and mailed to the person whose life is insured or to the assignee or owner of the policy at his or her last known post office address in the state. So there's no default. You just just keep going. I'm sorry, Judge Wilkinson. I didn't mean to interrupt. No, go ahead. I'm good. What part in this statute does the does her actions do her actions play? Is there something akin to the invited error? Or wherever when somebody has everything else, the driver's license, auto insurance, bank statements, and actually files an address, a change of address form. And is that tantamount to a request to the insurance company to say, here's my address, send your communications to me? I think that the way that the insurance company, the policies of the insurance, internal policies of the insurance company work is that if it receives notice of a change of confirmation letters, in fact, the confirmation letter to the old address said, if this is wrong, and that's a good point, I should have mentioned this earlier, the confirmation letter to the old address, North Carolina address, if we receive this notice of a change of address, if this is incorrect, please notify us that this is incorrect. And there was no notification for to request, as you're saying, Judge Wilkinson, that, you know, we need some kind of confirmation from you if this is incorrect. And so the internal policy of the company is we've received notice, they're entitled to rely on that. And they asked for confirmation, for the insured to let us know if this is not the case. And that's why they sent it to the old address. And they didn't receive any notice that it was incorrect. I think they actually had moved to the old address. But all I'm saying is that I haven't seen a lot of cases in which an insurance company actually bent over backwards to this extent, to find out how it could best communicate with the insured. Yes, sir. Well, their position is that they did do that, but they made a good faith effort to determine where the notification should be sent. And in fact, it turned out that that was correct. She was in South Carolina, and they sent all of the subsequent correspondence to the correct address. And how much correspondence was sent to her correct address? Well, there was a premium, the next premium notice was sent, which was in November of 2015. There was a lapse notice that was sent in December of 2015, when the premium wasn't paid. There was a subsequent letter in January 2017 about the lapse and inviting her to reapply for coverage. So there were at least three letters that went after the two letters that were sent to confirm the change of address. I mean, I would be delighted if I had an insurance company that made those kinds of extraordinary efforts to keep in touch with me. Yes, sir. And if I just... Jim Jorgensen, you should try to cancel a subscription to a magazine. They go, they go send you three or four letters. If you will indulge me, I see that my time is up. If I could just have a few more minutes to talk about the absurdity doctrine. I don't want to do that without permission. So if someone is willing to allow me to, I will. All right. Thank you, sir. We appreciate it. Mr. Mavio. Yes, Your Honor. I just have a few quick points that I wanted to respond to in time based on the panel's questions as well as Southern Farm's positions. One, there's been a lot of discussion regarding about Ms. Whitmire taking actions and instituting changes when she moved to South Carolina. From my knowledge and from my research, I have found nowhere in North Carolina law that Ms. Whitmire's actions alone can change that an insurance company has to follow the regulations set down by the North Carolina General Assembly. As it's been pointing out by Judge Richardson, this statute provides a safety net. It provides a basement of what must be done. And Ms. Whitmire taking actions to move herself to change banks or whatever else does not change that Southern Farm is required as an insurance company operating in North Carolina to follow North Carolina law. That doesn't sound quite right that there's nothing an insurer can do here with regard to this. It seemed to me there's probably some things could be done. She could acknowledge or submit some sort of consent that the last known address for the purposes of the state of North Carolina, she'll be in South Carolina. I mean, she probably could do that directly. I would be sensitive to that even though because here the purpose isn't so much to send it to the address as to get it to her. That's the purpose of it and that's what you're really going to it. But when you're getting the purpose, the question is all the way back into ambiguity of the statute here. But this strict requirement, I have no doubt that the opponent is correct, will create serious problems for insurance companies. It is an artfully drawn. I don't know how many other states have it. I've sat on the Uniform Law Commission for well over 25 years myself. I don't know if I've seen too many like this. But you may need to get some lobbyists to go back to North Carolina and clean this statute up. Even if you prevail or not prevail on the other side of this case. But, you know, I don't get it in terms of where we are with regard to this language and whether it is absurd. And I'm leaning to say maybe there is a reasonable interpretation that would say it's not absurd. I don't know where my colleagues are on absurd. I'm having some trouble with this ambiguity though. This statute says what it says. I don't like what it says and I don't like how it plays out here. And she did do it. There's the problem here that I see. The insurance company, I think, correctly says you could probably rely upon a change address notice from the post office. I mean, probably could. But they sent confirmation notices. They didn't just rely on it and got nothing. And it would seem to me if you get nothing, you just keep doing what you've been doing. You wouldn't assume this. But I could see both sides of it. How do you come out with that? Well, I know how you come out with it. Go ahead. Just give me a comment. No, I understand, Your Honor. And I think you make a good point though in the sense that there is a track history here of what happened underneath this policy for a decade. And for a decade, it collected over $20,000 in premiums from the payments on those notices. And what's important to note is that it had an entire contract set up understanding this woman, Ms. Whitmire, lived in North Carolina. As such, it was required to follow North Carolina law. And what is insightful from dealing with this is that there are principles within North Carolina from the Supreme Court directly from it relating to forfeitures, how they are not favored, as well as a compulsory insurance statute must be interpreted in a manner that gives coverage where reasonably possible. And as my time's winding down- You know what makes this really troubling is that it was Ms. Whitmire was paying these premiums. He knew that his wife was not paying these premiums at all. He had no indication that he paid a premium at all. He knew he hadn't been paying these premiums. And maybe the notices were going to that. I'm only saying that not in terms of interpretation of the statute. But when we get into the business of the parties and who's blameworthy and who's not, I mean, he's not totally innocent on this thing here. He knows he's not being paid premiums. You don't pay premiums when policies lapse. But you got to have the right notice for when it lapse. That's the problem we got. And that's where we get to the statute, Your Honor. Anyway, I don't know how we come down on this. At least I don't know how I come down on it, but it's an interesting case. Well, Your Honor, I think you make a really good point, though, in the sense that Ms. Whitmire left the residence in North Carolina before the May notice of 2017 was sent there. And when Mr. Whitmire received that notice, he paid it, even though Ms. Whitmire was not currently at the residence. So it's safe to assume that if months later, in accordance with the semiannual billing of the policy, that he would have also made that payment, showing that Southern Farms compliance with sending a notice to the last known address would have kept this policy in effect. And I see my time winding down. Can I ask one question? So maybe I just got confused on that. So the May notice went to North Carolina and got paid. Where did they send the November notice to? They sent that to South Carolina where it was not paid, Your Honor. Not North Carolina? That is correct. It was not sent in the state of North Carolina. And so the blame, if any, on Mr. Whitmire is that he didn't notice that the bill he'd gotten for a decade didn't show up. And so he didn't then raise the alarm that he should keep paying the premium that he had been paying for a decade. Well, yes, Your Honor. Being that it was direct every time the bill would come in, like any sort of bill you have, like a water bill, you pay it once it arrives at your house. And it did not arrive during this time of November. So he did not make a payment as he did for the 10 years prior. And lastly, if I can conclude, there is a case in North Carolina that shows how this statute was interpreted by a North Carolina court and how it's found to be implemented. And that case specifically, Your Honors, is Garland. Now, there's been some contention by the district court as well as Southern Farm about the precedent of what Garland gives us. However, it's the only case in all of North Carolina that gives us direct insight to how a judge dealt with this statute. As such, I would find that it has very high presidential value to understanding how this would play out. And specifically, in Garland, we get the jury instruction from the court that shows if it is found the notice was not sent in this state, you must find as a matter of law, the policy could not have lapsed. Because again, the statute was not complied with. I have one last question. Judge Wilkerson, Judge Richardson, did he completely answer your question on that? Absolutely. So I have one last question. She sent a change of address notice, which meant that if Mayo went to this last known address, it would go to South Carolina. Is that correct? In other words, they sent a notice to that address based upon a change of address that the post office would forward to South Carolina. That is correct, right? I don't have the notice in front of me if it was automatically forwarding, but I know she did update her address underneath the post service. But I do know that sometimes it does not automatically forward all your mailing. Well, I think if we followed it, the post office is going to do what it says to do. And you asked them to forward Mayo to address in this state to another place. The question I'm having is, was that still in effect when she was back at this when she died? Was that still in effect, the forwarding of the mail to the South Carolina address? And you see where I could go with that. And that is, it wouldn't make a difference to send it to the South Carolina address because it's like having a triangle or a point A to point B. You don't have to go to point B if point B is going to send it to C, from A can go straight to C on it here. So was that, does the record disclose, is what I should ask, that that forwarding process was still in place when she died? As far as I'm aware, she did not send an updated change of address form to the USPS. And I think that can answer your question, your honor, in the sense that the record doesn't reflect anything regarding that change. And if I may just wrap up, Mr. Whitmire. Just to make sure I understand that, but there's a, I mean, I don't know the answer to this, but the post office doesn't forward your mail, you know, forever. Right. And so even if, if there's a request to forward, and I don't know that we have one here, do we know how long it lasts? In terms of the length, I believe you can set the length when you send the post office your change of address. But I think that- Do we have any of that, is any of that information in the record, I guess? Yes, I believe that it is. I believe it's typically done for, I think, 365 days, I believe, is the standard. I think, I'm not 100% sure as I don't have the notice in front of me, your honor. Okay. But you said that's in the joint appendix? Yes, that is correct. In the sense that it's you will find it in there, the change of address that you filed. And in wrapping up, your honors, Mr. Whitmire's entire argument simply has been that Southern Farm was required to do what it did just three months before sending this notice, which is send a notice to a North Carolina address that it did for Ms. Whitmire when it was notified of that address change. And if it would have done so, it would have been entitled to forfeit Ms. Whitmire's policy for a missing premium payment. Since that was not followed by the plain statutory language required, Ms. Whitmire's coverage was still in effect when she passed away just a few months after that missed premium payment. Thank you, your honor.
judges: J. Harvie Wilkinson III, James Andrew Wynn, Julius N. Richardson